# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-3683

CARLOS BEDROSSIAN, M.D.,

*Plaintiff-Appellant,*

v.

NORTHWESTERN MEMORIAL
HOSPITAL, et al.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 03 C 3418—**John F. Grady**, *Judge.*

_____

ARGUED FEBRUARY 11, 2005—DECIDED MAY 31, 2005

_____

Before BAUER, POSNER, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Carlos Bedrossian, M.D., claims
that his employment with Northwestern University was ter-
minated in violation of the Uniformed Services Employment
and Reemployment Rights Act ("USERRA") and the False
Claims Act. The district court denied his request for prelim-
inary relief enjoining Northwestern from firing him. Because
a showing of irreparable harm is required for preliminary
injunctive relief under both statutes, and Bedrossian cannot
make the requisite showing, we affirm the decision of the
district court.

## I. History

Carlos Bedrossian, M.D., is a physician specializing in cytopathology, which means that he studies the effects of disease on a cellular level. He had practiced medicine for roughly thirty years when, in 1997, he was hired by Northwestern University as a professor in the Feinberg School of Medicine's Department of Pathology and as director of the cytopathology service within Northwestern Memorial Hospital ("the Hospital"). On commencing employment with Northwestern, Bedrossian also became a member of the Northwestern Medical Faculty Foundation, Inc. ("the Foundation"), a clinical practice group that employs physician members who have full-time faculty appointments at the Medical School and clinical practice privileges at the Hospital. Northwestern originally gave Bedrossian a non-tenure eligible, five-year renewable appointment. This original appointment expired in August 2002 and was then renewed for one additional year—with warning that it would not be renewed beyond August 2003.

Bedrossian also has a military career spanning over twenty years. As a colonel in the Medical Corps of the United States Air Force Reserve, he was obligated to spend 13-14 weekdays per year lecturing and one weekend per month providing medical services for the Air Force. Northwestern initially told Bedrossian that he would receive three to four weeks of paid military leave per year to fulfill these obligations. The arrangement was apparently satisfactory to both sides until 2001, when Bedrossian claims that several physicians began to harass him because of his military service.

One other fact is pertinent to Bedrossian's claims: in August 2001, he filed a *qui tam* complaint against the Hospital and the Foundation alleging billing practices in violation of the Federal False Claims Act, 31 U.S.C. § 3729. The government conducted an investigation, and

Bedrossian claims that in April 2002 the Hospital told him (presumably through one of its agents) that it knew he was the reason for this investigation. The United States formally declined to intervene in the action in August 2002.

According to Bedrossian, his termination from Northwestern (or, more accurately, the August 2003 non-renewal of his appointment) was based on his employer's contempt for his military service and in retaliation for filing the *qui tam* complaint. On May 21, 2003, he filed a lawsuit against the Hospital, the Medical School, the Foundation, and several individual Northwestern physicians alleging violations of both USERRA and the False Claims Act. Along with other relief, Bedrossian sought a preliminary injunction restraining the defendants from terminating his employment.

The district court denied the injunction, finding that Bedrossian was unable to make the showing of irreparable harm necessary for such relief. Bedrossian appeals, arguing that neither USERRA nor the False Claims Act requires a showing of irreparable harm. He also asserts that, if such a showing is required, his is the type of extraordinary case in which irreparable harm would result without preliminary relief.

## II. Analysis

Whether USERRA or the False Claims Act requires a showing of irreparable harm to obtain preliminary injunctive relief is a question of law which we review *de novo. See Kiel v. City of Kenosha*, 236 F.3d 814, 815 (7th Cir. 2000). An injunction is an equitable remedy that does not issue as a matter of course, but rather a remedy that courts may grant at their discretion in the extraordinary situations where legal remedies such as monetary damages are inadequate. *See, e.g., Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12 (1982); *City of Harrisonville v. W.S. Dickey*

*Clay Mfg. Co.*, 289 U.S. 334, 337-38 (1933). The Supreme Court's decision in *Romero-Barcelo* sets forth the test for determining whether Congress has limited the court's discretion by enacting a statute eliminating the tradition-ally required showing of irreparable harm for preliminary injunctive relief.

"Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." *Romero-Barcelo*, 456 U.S. at 313 (quoting *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946)).[1] In other words, unless a statute clearly mandates injunctive relief for a particular set of circumstances, the courts are to employ traditional equitable considerations (including irreparable harm) in deciding whether to grant such relief. *See Romero-Barcelo*, 456 U.S. at 313, 317-18 (holding that the Federal Water Pollution Control Act did not require the district court to enjoin the navy from discharging ordnance into water surrounding Puerto Rico because the statute did

---

[1] Bedrossian cites *Illinois Bell Telephone Co. v. Illinois Commerce Commission*, 740 F.2d 566, 571 (7th Cir. 1984), for the proposition that "where the plaintiff seeks an injunction to prevent the vio-lation of a federal statute that specifically provides for injunctive relief, it need not show irreparable harm." This broad interpre-tation of *Illinois Bell* is not the law; countless decisions (including *Romero-Barcelo*) have required a showing of irreparable harm under statutes that specifically provide for injunctive relief. As the D.C. Circuit recently stated, *Illinois Bell* and cases like it show that "if a statute confers a *right* to an injunction once a certain showing is made, no plaintiff . . . need show more than the statute specifies." *United States v. Microsoft Corp.*, 147 F.3d 935, 943 (1998) (emphasis in original). The statute at issue in *Illinois Bell* was the Communications Act, which states that a court "*shall* enforce obedience to [an FCC] order by a writ of injunction or other proper process" upon a showing of disobedience. 47 U.S.C. § 401(b) (emphasis added).

not unequivocally indicate congressional intent to limit the courts' traditional equitable discretion); *cf. TVA v. Hill*, 437 U.S. 153 (1978) (holding that the Endangered Species Act required the district court to enjoin construction of the Tellico Dam in order to preserve the snail darter because the statute expressly limited the remedies available to accomplish its objectives). We turn to the relevant language of both USERRA and the False Claims Act to determine whether either statute dispenses with a showing of irreparable harm as a prerequisite to injunctive relief.

USERRA states in its enforcement provision that "[t]he court may use its full equity powers, including temporary or permanent injunctions, temporary restraining orders, and contempt orders, to vindicate fully the rights or benefits of persons under this chapter." 38 U.S.C. § 4323(e). This language does not dispense with the requirement of a showing of irreparable harm "in so many words." On the contrary, the provision regarding injunctions is phrased in permissive rather than mandatory terms ("the court *may* use its full equity powers"), suggesting that the courts *should* exercise discretion and not consider themselves bound to grant injunctions as an exclusive remedy. Prompting the courts to use their *full* equitable powers, similarly, suggests that the normal rules of equity should apply—including proof of irreparable harm.

Moreover, we are not persuaded that the text, legislative history, and purpose of USERRA support a "necessary and inescapable" inference that Congress intended for plaintiffs under that statute to obtain preliminary relief without showing irreparable harm. USERRA was enacted in 1994 pursuant to the War Powers Clause[2] to encourage nonca

---

[2] U.S. Const. art. I, § 8, cl. 11. Bedrossian's argument notwithstanding, the constitutional power used by Congress in enacting
(continued...)

reer military service, to minimize disruptions in the lives and communities of those who serve in the uniformed services, and to prohibit discrimination against people because of their service. 38 U.S.C. § 4301. Reserve health professionals such as Bedrossian, who also have civilian careers, are undoubtably vital to the United States military. Congress sought to "minimiz[e] the disadvantages to civilian careers and employment which can result from [service in the uniformed services]" by allowing a complainant (or the Attorney General, on the complainant's behalf) to sue an employer who has "failed or refused, or is about to fail or refuse, to comply with the provisions of [USERRA.]" 38 U.S.C. §§ 4301, 4322.

The inference that injunctive relief is required to accomplish these goals is not "necessary and inescapable." Other employment statutes, including Title VII, the Americans with Disabilities Act ("ADA"), and the Age Discrimination in Employment Act ("ADEA") contain similar statements of ambitious congressional purpose. *See* 29 U.S.C. § 621(a)(1)(b) (stating that the purpose of the ADEA is to "prohibit arbitrary age discrimination in employment"); 42 U.S.C. § 12101(a) (stating that the purpose of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities"); *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 889 (7th Cir. 1996) (stating that Congress's objective in passing Title VII was to "remove barriers" against minority employees). In effectuating the congressional intent behind

---

[2] (...continued)
USERRA is irrelevant here. The constitutionality of the statute is not in question; we must simply ascertain Congress's intent with respect to preliminary injunctive relief. It is perfectly appropriate to consider precedents on similar enforcement provisions in statutes passed pursuant to other constitutional powers in answering this question.

these statutes, courts have nevertheless required a showing of irreparable harm before granting preliminary injunctions. *See, e.g.*, *Washington v. Ind. High Sch. Athletic Ass'n*, 181 F.3d 840, 845 (7th Cir. 1999) (ADA); *Hetreed v. Allstate Ins. Co.*, 135 F.3d 1155, 1158 (7th Cir. 1998) (Title VII); *Gately v. Massachusetts*, 2 F.3d 1221, 1224 (1st Cir. 1993) (ADEA). We agree with the district court that there is "no material difference between the Congressional policy underlying [USERRA], as expressed in the statutory language, and other employment discrimination statutes . . . that require a showing of irreparable harm as a predicate for preliminary relief."

We next address Bedrossian's argument that the "about to harm" language in USERRA implies elimination of the irreparable harm requirement because it would be impossible to show irreparable harm when the employer is merely threatening to disobey the law. In most preliminary injunction proceedings, the irreparable harm that one must prove has not yet taken place, because the plaintiff is trying to enjoin actions that have not yet been taken. Like most other plaintiffs, a USERRA plaintiff has standing to seek a preliminary injunction when irreparable harm is imminent. There is no "necessary and inescapable" inference dispensing with proof of irreparable harm, and we believe that Congress's intent can be accomplished through remedies other than preliminary injunction.

We move on to Bedrossian's claim of retaliation under the False Claims Act, which provides in relevant part:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assis-

> tance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

31 U.S.C. § 3730(h). Rather than disposing of the irreparable harm requirement "in so many words," this language actually supports the position that the customary equitable considerations should be made. There is no mention of preliminary relief, and the statute specifically discusses monetary damages and reinstatement as remedies that can make a plaintiff whole.

While Congress clearly passed this provision to protect "whistleblowers," a "necessary and inescapable" inference that preliminary injunctions without proof of irreparable harm flow from the False Claims Act does not follow. Many other federal statutes contain provisions to protect from retaliation individuals who expose violations to the government. *See, e.g.*, 42 U.S.C. § 2000e-3 (Title VII); 29 U.S.C. § 623(d) (ADEA); 42 U.S.C. § 12203 (ADA). As discussed above, these statutes still require proof of irreparable harm for preliminary injunctive relief.

Our conclusion that Congress did not intend to dispense of the irreparable harm requirement in either USERRA or the False Claims Act is bolstered by the same rationale that has made the requirement a firmly entrenched prerequisite for preliminary relief. "[T]he traditional function of equity has been to arrive at a 'nice adjustment and reconciliation' between the competing claims[.]" *Romero-Barcelo*, 456 U.S. at 312 (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944)). The irreparable harm requirement helps the courts

weigh the costs of denying a preliminary injunction to a plaintiff who goes on to win on the merits against the costs of granting the injunction to one who goes on to lose. *Roland Mach. Co. v. Dresser Indus.*, 749 F.2d 380, 388 (7th Cir. 1984). This balancing seems especially wise in an employment case such as Bedrossian's. Should he prevail on the merits of his suit, damages will make up what he has presumably lost during unemployment. *See Hetreed*, 135 F.3d at 1158. On the other hand, Northwestern would not be likely to recoup the losses it might incur were it erroneously forced to employ Bedrossian while this lawsuit is resolved on the merits, including his salary and reduced productivity. *See id.*

Having concluded, as the district court did, that both USERRA and the False Claims Act require showings of irreparable harm for preliminary injunctive relief, we review the district court's finding that Bedrossian could not satisfy this requirement for abuse of discretion. *Outsource Int'l, Inc. v. Barton*, 192 F.3d 662, 666 (7th Cir. 1999). Under this standard, we reverse only "where no reasonable person could take the view adopted by the [district] court." *Harrington v. DeVito*, 656 F.2d 264, 269 (7th Cir. 1981).

The Supreme Court set a high standard for obtaining preliminary injunctions restraining termination of employment in *Sampson v. Murray*, 415 U.S. 61 (1974). Although it did not "foreclose[] relief in the genuinely extraordinary situation," the type of irreparable injury required must really depart from the harms common to most discharged employees. *Id.* at 92 & n.68. The plaintiff in *Sampson* alleged humiliation, damage to reputation, and loss of income due to her purportedly wrongful termination from federal employment. *Id.* at 92. The Court held that these injuries did not rise to the level of an extraordinary termination of employment situation, and that they were not "irreparable" to warrant a preliminary injunction. *See id.*

The "irreparable harms" of lost income and damaged reputation alleged by Bedrossian are quite similar to those in *Sampson* and in fact typical of the injuries involved in any employment case. We have consistently held that physicians are awarded no special treatment under *Sampson* even when, like Bedrossian, they assert that termination will cause a "deterioration in skills." *See Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1460 (7th Cir. 1995); *Dos Santos v. Columbus-Cuneo-Cabrini Med. Ctr.*, 684 F.2d 1346, 1349 (7th Cir. 1982). Likewise, inability to find another job, which Bedrossian has claimed,[3] is not irreparable harm. *See Roth*, 57 F.3d at 1460. The district court did not abuse its discretion in concluding that Bedrossian failed to show the irreparable harm required for a preliminary injunction against Northwestern.

### III.  Conclusion

In sum, neither USERRA nor the False Claims Act permits Bedrossian to obtain preliminary injunctive relief without a showing of irreparable harm. Because he cannot show irreparable harm under the *Sampson* standard, we AFFIRM the district court's denial of a preliminary injunction prohibiting Northwestern from terminating Bedrossian's employment.

---

[3]  Bedrossian has not offered any evidence that he applied unsuccessfully for other positions or that Northwestern's failure to reappoint him was the reason for any rejection. Even if unemployability could be considered an irreparable injury, he has not presented adequate facts to make this more than a "speculative" harm. *See Singer Co. v. P.R. Mallory & Co.*, 671 F.2d 232, 235 (7th Cir. 1982).

No. 03-3683                                                    11

A true Copy:

    Teste:

                              _____
                               *Clerk of the United States Court of*
                               *Appeals for the Seventh Circuit*