**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 30, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

FIRST WESTERN CAPITAL
MANAGEMENT COMPANY, a Colorado
corporation; FIRST WESTERN
FINANCIAL, INC., a Colorado
corporation,

      Plaintiffs - Appellees,

v.

KENNETH D. MALAMED,

      Defendant - Appellant.

Nos. 16-1434, 16-1465 & 16-1502

_____

**Appeals from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:16-CV-01961-WJM-MJW)**
_____

Submitted on the briefs:[*]

Kent B. Goss, Orrick Herrington & Sutcliffe LLP, Los Angeles, California and Paul H.
Schwartz, Shoemaker Ghiselli & Schwartz, LLC, Boulder, Colorado, for Appellant.

Timothy R. Beyer and Sarah L. Hartley, Bryan Cave LLP, Denver, Colorado, for
Appellee.

_____

---

   [*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument.

Before **McKAY**, **MATHESON**, and **McHUGH**, Circuit Judges.

_____

**MATHESON,** Circuit Judge**.**

_____

First Western Capital Management ("FWCM"), an investment management company, and its parent company First Western Financial, Inc. (collectively, "First Western"), sought a preliminary injunction against former employee Kenneth Malamed for misappropriating trade secrets. The district court excused First Western from demonstrating irreparable harm—one of the four elements a party seeking injunctive relief is typically required to prove—and granted the injunction. Mr. Malamed appeals. Exercising jurisdiction under 28 U.S.C. § 1292(a)(1), we reverse.

## I. BACKGROUND

### A. *Factual History*

First Western is headquartered in Denver, Colorado. In 2008, it acquired Financial Management Advisors, LLC ("FMA"), an investment firm Mr. Malamed founded in 1985 primarily to serve high net worth individuals and entities such as trusts and foundations. After selling FMA, Mr. Malamed worked for FWCM from 2008 until FWCM terminated him on September 1, 2016.

In early 2016, a committee of FWCM directors began discussing the possibility of selling FWCM to another company. Although Mr. Malamed was not involved in these discussions, he learned about the potential sale and, in a meeting with other FWCM

2

officers, expressed his displeasure with the buyer under consideration. Following the meeting, Mr. Malamed emailed his assistant asking her to print three copies of his client book, which contained the names and contact information for approximately 5,000 FWCM contacts. Of these contacts, 331 were current FWCM clients and roughly half of those had been clients of FMA before First Western acquired it. The printout also contained spreadsheets that included, among other information, client names, the total market value of their holdings under management, and the fees being charged by FWCM.

On September 1, 2016, shortly after Mr. Malamed's employment contract expired, First Western fired him.

B. *Procedural History*

On September 1, 2016, the same day Mr. Malamed was fired, First Western served him with a complaint it had filed in federal court a month earlier. The complaint alleged misappropriation of trade secrets under the federal Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 ("DTSA"), and the Colorado Uniform Trade Secrets Act, Colo. Rev. Stat. §§ 7-74-101 et seq. ("CUTSA"), breach of employment contract, and breach of fiduciary duty. First Western moved for a temporary restraining order and a preliminary injunction to prevent Mr. Malamed from soliciting FWCM's clients.

After conducting an evidentiary hearing, the district court issued a preliminary injunction preventing Mr. Malamed from "soliciting business from, or otherwise competing for the business of, any FWCM Client; and . . . from accepting business

3

offered from any FWCM Client," with some exceptions. App., Vol. I at 200.[1] In making this decision, the court excused First Western from demonstrating one of the standard requirements to obtain injunctive relief—a showing of irreparable harm in the absence of an injunction.[2] Citing our decision in *Star Fuel Marts, LLC v. Sam's East, Inc.*, 362 F.3d 639 (10th Cir. 2004), the court said, "[T]he irreparable harm requirement is excused when the evidence shows that a defendant is or will soon be engaged in acts or practices prohibited by statute, and that statute provides for injunctive relief to prevent such violations." App., Vol. I at 196. "Because both the DTSA, 18 U.S.C. § 1836(b)(3)(A), and CUTSA, Colo. Rev. Stat. § 7-74-103, provide for injunctive relief to prevent misuse of trade secrets," and because "Mr. Malamed [was] misusing or threatening to misuse trade secrets regarding FWCM clients," the court determined that "irreparable harm presumptively exists and need not be separately established." *Id.* at 196-97.

---

[1] The preliminary injunction applied to all FWCM clients "other than the Excepted Clients and Other Intended Departures." App., Vol. I at 200 . The "Excepted Clients" were six individuals specifically excluded from the PI Order. The court defined "Other Intended Departures" as certain FWCM clients who had already expressed their intent to close their FWCM accounts before September 1, 2016.

[2] To obtain injunctive relief, a party generally must demonstrate: (1) a substantial likelihood of success on the merits, (2) irreparable injury in the absence of the injunction, (3) its threatened injury outweighs the harm to the opposing party under the injunction, and (4) the injunction is not adverse to the public interest. *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009).

Had First Western not been excused from showing irreparable harm under *Star Fuel*, however, the court would have denied injunctive relief because it determined that money damages could be "reasonably quantified" and "would have adequately made [First Western] whole." *Id.* at 197 n.5. The court questioned whether *Star Fuel* remained good law in light of subsequent Supreme Court cases "strongly suggest[ing] that no element of the injunction test should be presumed." *Id*. But it concluded that because this court had not yet addressed that question, it was "bound to follow [*Star Fuel*]." *Id*.

This court addressed precisely that question in *Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016), issued just three weeks after the district court granted First Western the preliminary injunction. In *Fish*, we explained that Supreme Court cases following *Star Fuel* "clarif[ied] the narrow circumstances when a presumption of irreparable injury could apply." *Id*. at 751 n.24. Courts may presume irreparable harm only when a party is seeking an injunction under a statute that *mandates* injunctive relief as a remedy for a violation of the statute. *Id*. When Congress passes such a statute, it effectively withdraws the courts' traditional discretion to determine whether such relief is warranted. *Id*. When, by contrast, a statute merely *authorizes* injunctive relief, courts may not presume irreparable harm, as doing so would be "contrary to traditional equitable principles." *Id*. (quotations omitted).

On October 28, 2016, Mr. Malamed appealed, seeking our review of the preliminary injunction. This is appeal 16-1434. He later filed two additional appeals—16-1465 and 16-1502—challenging separate district court orders pertaining

5

to the scope of the preliminary injunction. This court consolidated the appeals, and Mr. Malamed filed a single, consolidated opening brief for all three appeals. Our reversal of the preliminary injunction in appeal 16-1434 renders the other appeals moot.

## II. **DISCUSSION**

We discuss: (A) our standard of review, (B) the requirements for obtaining injunctive relief, and (C) whether First Western is excused from demonstrating one of those requirements—irreparable harm. We conclude that First Western must show irreparable harm to obtain an injunction. Because the district court had already determined First Western cannot establish irreparable harm, injunctive relief was not warranted. We reverse.

### A. *Standard of Review*

We review orders granting a preliminary injunction for abuse of discretion. *Awad v. Ziriax*, 670 F.3d 1111, 1125 (10th Cir. 2012). An abuse of discretion occurs when a decision is premised "on an erroneous conclusion of law or where there is no rational basis in the evidence for the ruling." *Id.* (quotations omitted). Thus, we review the district court's factual findings for clear error and its conclusions of law—including whether to excuse a party from showing irreparable harm—de novo. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003).

6

## B. *Legal Background*

### 1. **Preliminary Injunctions**

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008). A party may be granted a preliminary injunction only when monetary or other traditional legal remedies are inadequate, and "the right to relief [is] clear and unequivocal." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quotations omitted).

Under Rule 65 of the Federal Rules of Civil Procedure, a party seeking a preliminary injunction must show: "(1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *Fish*, 840 F.3d at 723 (alterations and quotations omitted); *see also Schrier*, 427 F.3d at 1258.

Regarding irreparable harm, the movant "must demonstrate a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages." *Fish*, 840 F.3d at 751 (quotations omitted). "[C]ourts have consistently noted that because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements" will be considered. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (quotations omitted). Demonstrating irreparable

harm is "not an easy burden to fulfill." *Greater Yellowstone Coal v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003).

2. ***Fish v. Kobach***

Although a party seeking a preliminary injunction generally must show all four elements, in limited circumstances courts may presume irreparable harm and grant injunctive relief. *Fish* clarified when this presumption applies.

Under *Fish*, when a statute mandates injunctive relief as a remedy for a violation—or impending violation—of the statute, it has effectively constrained the courts' traditional discretion to determine whether such relief is warranted. *Fish*, 840 F.3d at 751 n.24. In that case, courts presume irreparable harm and grant an injunction even if the moving party failed to show it. *Id.* But when a statute merely authorizes—rather than mandates—injunctive relief, courts must determine that the moving party has established all four elements to grant injunctive relief. *Id.*; *see also Bedrossian v. Nw. Mem'l Hosp.*, 409 F.3d 840, 843 (7th Cir. 2005).

In *Fish*, voters in Kansas sued the Kansas Secretary of State, alleging that section 5 of the National Voter Registration Act (the "NVRA"), 52 U.S.C. § 20504, preempted a Kansas law requiring documentary proof of citizenship ("DPOC") for voter registration. The district court found the plaintiffs "had made a strong showing that Kansas's DPOC law was preempted by NVRA section 5" and granted plaintiffs' motion for a preliminary injunction against enforcement of Kansas's DPOC requirements. *Id.* at 716. The government appealed, arguing the plaintiffs had failed to meet the irreparable harm standard.

8

On appeal, the plaintiffs defended the court's determination that they need not demonstrate irreparable harm, arguing that under our precedent in *Atchison, Topeka & Santa Fe Ry. Co. v. Lennen*, 640 F.2d 255 (10th Cir. 1981), no showing of irreparable harm is necessary when "the defendants are engaged in, or about to be engaged in, the act or practices prohibited by a statute which *provides for* injunctive relief to prevent such violations." *Fish*, 840 F.3d at 751 n.24 (quoting *Atchison*, 640 F.2d at 259) (emphasis added). We rejected this argument, explaining that *Atchison* and the *Star Fuel* line of cases must be read in light of the Supreme Court's later decisions, which "clarify the narrow circumstances when a presumption of irreparable injury could apply stemming from congressional enactment." *Id.*; *see Winter v. NRDC*, 555 U.S. 7 (2008). Courts may presume irreparable harm, we explained, only when Congress clearly intended to depart from established principles of equity jurisprudence and mandate injunctive relief. Finding "no indication in the NVRA's text that Congress intended to constrain or otherwise guide the traditional exercise of equitable jurisdiction in weighing whether an injunction should issue," we held the plaintiffs were required to demonstrate irreparable harm to obtain injunctive relief. *Id.*

Our sibling circuits have similarly recognized the Supreme Court's narrowing of the circumstances under which courts may presume irreparable harm. Earlier circuit court decisions had stated, as we did in *Star Fuel*, that a movant need not show irreparable harm when seeking an injunction to prevent the violation of a statute that merely provided for injunctive relief. *See Burlington N. R.R. Co. v. Bair*,

9

957 F.2d 599, 601 (8th Cir. 1992); *Ill. Bell Tel. Co. v. Ill. Commerce Comm'n*, 740 F.2d 566, 571 (7th Cir. 1984). These courts later clarified that "unless a statute *clearly mandates* injunctive relief . . ., the courts are to employ traditional equitable considerations (including irreparable harm) in deciding whether to grant such relief." *Bedrossian*, 409 F.3d at 843 (emphasis added) (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305 at 313, 317-18); *see In re Sac & Fox Tribe of the Mississippi in Iowa/Meskwaki Casino Litig.*, 340 F.3d 749, 760-62 (8th Cir. 2003) (applying a four-part test in the absence of a statute providing only equitable remedies); *see also C.B. v. Bd. of School Comm'rs of Mobile, Cty.*, 261 F. App'x 192, 194 (11th Cir. 2008) (unpublished) (refusing to presume irreparable harm where the statute in question provided for, but did not mandate, injunctive relief).

### 3. **The Statutes**

DTSA and CUTSA, authorize—but do not require—injunctive relief.[3] DTSA states that "a court *may* . . . grant an injunction . . . to prevent any actual or threatened misappropriation," or the court may award "damages for actual loss caused by the misappropriation of the trade secret." 18 U.S.C. § 1836(b)(3)(A), (B) (emphasis added). It also provides for other means of enforcement, permitting recovery of damages for "unjust enrichment . . . that [were] not addressed in

---

[3] Nor does either statute "limit[] the remedies available to the District Court" such that "only an injunction could vindicate the objectives of" the statute. *See Amoco Prod. v. Vill. of Gambell,* 480 U.S. 531 at 543 n.9 (quotations omitted) (distinguishing statute at issue in that case from the Endangered Species Act, which required the district court to enjoin completion of a dam to preserve an endangered species).

computing damages for actual loss" and "exemplary damages" in cases where the trade secret was "willfully and maliciously misappropriated." *Id.* § 1836(b)(3)(B), (C).

Similarly, CUTSA provides that "[t]emporary and final injunctions . . . *may* be granted on such equitable terms as the court deems reasonable to prevent or restrain actual or threatened misappropriation of a trade secret." Colo. Rev. Stat. § 7-74-103 (emphasis added). It also permits "a complainant . . . to recover damages for misappropriation," which can include "both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss." *Id.* § 7-74-104.

## C. *Analysis*

We conclude: (1) First Western was required to demonstrate irreparable harm; (2) based on the district court's determination that First Western was unable to demonstrate irreparable harm, the preliminary injunction was unwarranted; and (3) First Western's remaining arguments lack merit.

### 1. **The Statutes Do Not Permit a Presumption of Irreparable Harm**

DTSA and CUTSA—like the statute at issue in *Fish*—merely authorize and do not mandate injunctive relief and thus do not allow a presumption of irreparable harm. We need not determine whether *Fish* overruled *Star Fuel*; we need only acknowledge, as the court did in *Fish*, that we must read *Star Fuel* in light of later Supreme Court cases clarifying the proper application of the irreparable harm

11

presumption.  As applied here, if First Western cannot show irreparable harm, it cannot obtain injunctive relief.

## 2. **No Showing of Irreparable Harm, No Preliminary Injunction**

We need not address each of the four preliminary injunction factors here because the district court has already determined First Western cannot show irreparable harm.  The court found that if First Western ultimately succeeded on its claims against Mr. Malamed, money damages could be quantified and would "adequately ma[k]e [the company] whole."  App., Vol. I at 197 n.5.  Without showing irreparable harm, First Western cannot obtain a preliminary injunction.  *See Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) ("[E]ven if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper.")  The district court should not have entered the preliminary injunction here.

## 3. **First Western's Arguments**

First Western argues that the district court's finding of no irreparable harm was cursory and nonbinding, that Mr. Malamed forfeited his irreparable harm argument, and that we should reject his argument based on the doctrines of judicial estoppel and stare decisis.  None of these arguments has merit.

### a. *District court's finding on irreparable harm*

First Western argues we should disregard the court's irreparable harm finding as perfunctory and dicta.  It requests that if we determine it was required to show

12

irreparable harm, we remand for further proceedings. But remand is unnecessary. The district court made its irreparable harm finding having fully aired the issue. It had the benefit of extensive briefing on irreparable harm from both parties. The court also conducted a day-long preliminary injunction hearing. It heard argument and testimony, including from top-level First Western executives, on whether the company would face irreparable harm absent an injunction. The court nevertheless determined that monetary damages were quantifiable and sufficient to make First Western whole. Having reviewed the parties' briefs and the record, including the transcript of the preliminary injunction hearing, we see no reason to question the court's determination that First Western failed to show irreparable harm.

b. *Forfeiture*

First Western contends Mr. Malamed failed to raise in district court the argument he now makes on appeal—that First Western must show irreparable harm because "[t]he requirement of irreparable harm is excused only when a statute unequivocally requires the courts to issue [preliminary injunctions], not merely when it permits courts to do so." Aplt. Br. at 25; *see Paycom Payroll, LLC v. Richison*, 758 F.3d 1198, 1203 (10th Cir. 2014) (explaining that when a theory was not raised before the district court, we usually hold it forfeited). We need not decide whether Mr. Malamed forfeited this argument.[4] Even if he did, we may exercise our discretion to consider it.

---

[4] In its motion for a preliminary injunction, First Western argued that under *Star Fuel*, it was exempt from the irreparable harm requirement. Mr. Malamed

13

"Normally when a party presents a new argument on appeal and fails to request plain error review, we do not address it." *Margheim v. Buljko*, 855 F.3d 1077, 1088 (10th Cir. 2017). But even when a party fails to preserve an issue, we retain "discretion to raise and decide issues sua sponte, even for the purpose of reversing a lower court judgment," because "[w]aiver . . . binds only the party, not the court." *Planned Parenthood of Kan. & Mid-Mo. v. Moser*, 747 F.3d 814, 837 (10th Cir. 2014) (abrogated in part on other grounds by *Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378 (2015)); *see also Singleton v. Wulff*, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first

---

responded by repeatedly making general assertions that First Western was required to show irreparable harm. *See, e.g.*, App., Vol. I at 27 ("In order to be entitled to entry of a preliminary injunction pursuant to Fed. R. Civ. P. 65, Plaintiffs must establish that: (1) they will suffer irreparable injury unless the injunction issues . . . .") (citing *Schrier*, 427 F.3d at 1258); *id.* ("The moving party bears the burden of persuasion as to each of the four factors relevant to injunctive relief." (quoting *Winmark Corp. v. Schneeberger*, No. 13-cv-0274-WJM-BNB, 2013 WL 1154506, at *4 (D. Colo. Mar. 19, 2013)); *id.* at 28 ("A showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." (quoting *Dominion Video Satellite*, 356 F.3d at 1260)).

But Mr. Malamed never addressed First Western's argument that under *Star Fuel*, it was excused from showing irreparable harm. Instead, he relied solely on general statements of law laying out the traditional four-part preliminary injunction test. During the preliminary injunction hearing, the district court even noted its surprise that Mr. Malamed had failed to respond to First Western's *Star Fuel* argument. Mr. Malamed preserved a general argument about the four requirements typically required to obtain injunctive relief, but whether he preserved his specific argument—that courts may excuse a showing of irreparable harm only when the statute mandates an injunction—is less clear. *See Margheim v. Buljko*, 855 F.3d 1077, 1088 (10th Cir. 2017) (holding that a party's argument in district court—that the dismissal of a previous case was not a "favorable" termination—failed to preserve for appeal a specific argument about the *reason* why the previous case was not favorably terminated).

14

time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.").

"Our discretion allows us to determine an issue raised for the first time on appeal if it is a pure matter of law and its proper resolution is certain." *Cox v. Glanz*, 800 F.3d 1231, 1246 n.7 (10th Cir. 2015) (quotations omitted); *see also Ave. Capital Mgmt. II, L.P. v. Schaden*, 843 F.3d 876, 886 (10th Cir. 2016) ("[E]ven for matters of law, we decline to consider newly presented legal arguments unless the proper legal disposition is beyond reasonable doubt."). Although we use this discretion sparingly, *see United States v. Jarvis*, 499 F.3d 1196, 1202 (10th Cir. 2007), we reach Mr. Malamed's irreparable harm argument for five reasons.

First, the preliminary injunction requirements present purely a legal question, the proper resolution of which is certain under *Fish*. *See Margheim*, 855 F.3d at 1088; *Cox*, 800 F.3d at 1256 n.7.

Second, the district court was aware of this issue and addressed it. Although the court agreed with First Western that *Star Fuel* excused it from demonstrating irreparable harm, it acknowledged that "later Supreme Court precedent . . . call[ed] the *Star Fuel* line of precedent into doubt." App., Vol. 1 at 197 n.5. The general concern underlying the concept of forfeiture—that a district court was not alerted to the issue and lacked the opportunity to rule on it—is not implicated here. *See Somerlott v. Cherokee Nation Distribs., Inc.*, 686 F.3d 1144, 1150 (10th Cir. 2012).

Third, both parties had full opportunity to argue—and did argue—this issue on appeal. *See Jarvis*, 499 F.3d at 1202 ("We have justified our decision to exercise

discretion in these situations because . . . both parties had the opportunity to address the issue in their appellate briefing."); *see also Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1228-29 (10th Cir. 1996) (exercising discretion to reach issue that was "extensively briefed on appeal").

Fourth, our consideration of Mr. Malamed's argument is consistent with the notion that a preliminary injunction is an "extraordinary remedy" that is granted only when "the movant's right to relief [is] clear and unequivocal." *Wilderness Workshop v. U.S. Bureau of Land Mgmt.*, 531 F.3d 1220, 1224 (10th Cir. 2008) (alterations and quotations omitted). Given the nature of injunctive relief, we should not entrench an erroneous result based on forfeiture, particularly in light of the certain resolution of the legal question under *Fish*. *See Margheim*, 855 F.3d at 1088-89.

Finally, until we decided *Fish*, this court had not clarified the narrow circumstances in which a court could excuse a showing of irreparable harm and still issue a preliminary injunction. The fact that this court decided *Fish* three weeks after the district court entered its preliminary injunction and shortly before Mr. Malamed filed his notice of appeal lends support to exercising our discretion to reach the merits of this appeal. *See Green v. Bd. of Cty. Comm'rs*, 472 F.3d 794, 798 n.1 (10th Cir. 2007).

c. *Judicial estoppel*

First Western argues Mr. Malamed should be judicially estopped from making his irreparable harm arguments because his counsel cited a case during the preliminary injunction hearing that accords with *Star Fuel's* rule regarding when to excuse a showing of irreparable harm. Courts may invoke judicial estoppel to

16

prevent a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding. *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001). Although the circumstances in which courts apply this doctrine vary, three factors typically inform this decision: (1) "a party's subsequent position must be clearly inconsistent with its former position"; (2) the "party succeeded in persuading a court to accept that party's former position, so that judicial acceptance of an inconsistent position in a later proceeding would create the *perception* that either the first or the second court was misled"; and (3) the party "would gain an unfair advantage in the litigation if not estopped." *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007) (quotations omitted).

First Western does not analyze or even identify these factors, but judicial estoppel is plainly not warranted on these facts. Mr. Malamed has consistently maintained that First Western was required to meet all four preliminary injunction factors.[5] He never attempted to persuade the court that First Western should be excused from showing irreparable harm. And First Western does not identify—nor can we discern—what unfair advantage Mr. Malamed might gain if not estopped. First Western's judicial estoppel argument fails and, in any event, is inadequately briefed and thus waived. *See Leathers v. Leathers*, 856 F.3d 729, 750 (10th Cir. 2017).

_____

[5] The fact that Mr. Malamed's counsel said during the preliminary injunction hearing that irreparable harm was "not" the most important prerequisite for a preliminary injunction does not affect this analysis. Counsel clearly misspoke. *See* note 6, *supra*. Regardless, the relative importance of the four parts of the preliminary injunction test is irrelevant here.

17

d. *Stare decisis*

First Western argues the district court properly applied the law in our circuit at the time it issued its preliminary injunction—*Star Fuel*—and thus Mr. Malamed failed to demonstrate the district court erred. But as we explained in *United States v. Madrid*, "when case law alters the legal analysis between the time of trial and the time of appeal, it is enough that an error be 'plain' at the time of appellate consideration." 805 F.3d 1204, 1212 (10th Cir. 2015) (quotations omitted) (abrogated on other grounds by *Beckles v. United States*, 137 S. Ct. 886 (2017)); *see also United States v. Cordery*, 656 F.3d 1103, 1107 (adopting the rule that "plain error is measured at the time of appeal," even in situations when "the law at the time of the contested decisions was unsettled"). *Fish*—issued three weeks after the court's preliminary injunction—altered the legal analysis and rendered the preliminary injunction plainly erroneous. The district court's reliance on *Star Fuel* is thus beside the point.

## III. **CONCLUSION**

For the foregoing reasons, we reverse the district court's grant of a preliminary injunction[6] and dismiss the other appeals—16-1465 and 16-1502—as moot.

---

[6] Reversing the preliminary injunction obviates the need to consider the parties' remaining arguments regarding whether Mr. Malamed possessed trade secrets or could be prohibited from accepting unsolicited business.

18