FILED
United States Court of Appeals
Tenth Circuit

February 10, 2022

Christopher M. Wolpert
Clerk of Court

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

KEYBANK NATIONAL ASSOCIATION,

Plaintiff - Appellant,

v.

CHARLES H. WILLIAMS; TIMOTHY
WELDON,

Defendants - Appellees.

No. 20-1384
(D.C. No. 1:19-CV-03714-CMA-SKC)
(D. Colo.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **HARTZ**, **McHUGH**, and **CARSON**, Circuit Judges.
_____

This is an appeal from the denial of a preliminary injunction in a business tort

case.  KeyBank National Association (KeyBank) sued two of its former employees,

Charles Williams and Timothy Weldon (Appellees), after they left KeyBank to work

for a competitor, Newmark Knight Frank.  KeyBank alleged that Appellees breached

their non-compete agreements and used its trade secrets and confidential information

to divert business from KeyBank to Newmark.  KeyBank moved for a preliminary

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

injunction to prevent Appellees from doing business with and soliciting KeyBank's customers and misappropriating its trade secret and confidential information. The district court denied the motion, concluding KeyBank failed to show a probability of irreparable harm. KeyBank now appeals that order. The underlying litigation is ongoing, but we have jurisdiction under 28 U.S.C. § 1292(a)(1) to review the district court's denial of the preliminary injunction motion. We affirm.

## BACKGROUND

Appellees worked in KeyBank's Commercial Real Estate Division until they resigned in January 2019 and immediately began working for Newmark. While employed with KeyBank, they each signed confidentiality agreements prohibiting them from disclosing any KeyBank trade secrets and providing that upon termination of their employment, they would return all documents, data, and information containing trade secrets. In addition, at numerous times during their employment, they received restricted stock awards for their performance. To accept the awards, they electronically accepted the terms and conditions contained in stock award agreements, including non-compete provisions prohibiting them from soliciting or doing business with any existing or prospective KeyBank customer they interacted with or learned of during the course of their employment at KeyBank. The non-compete agreements expired in January 2020—one year after the termination of their employment with KeyBank.

Before accepting the job with Newmark, Williams emailed Newmark to facilitate the determination of the sign-on bonus Newmark would offer to Williams

2

and Weldon. Williams's email included information regarding his, Weldon's, and a colleague's production at KeyBank. He initially emailed Newmark PDFs of production data he had copied and pasted from KeyBank's 2016, 2017 and 2018 Pipeline Reports. These reports, which were maintained in Excel spreadsheets, contained statistical and financial data on mortgage-specific transactions involving numerous KeyBank clients. According to KeyBank, the Pipeline Reports contain confidential and trade secret data. The PDFs Williams sent Newmark did not include all of the information on the spreadsheet. He later gave Newmark the Pipeline Reports in an Excel spreadsheet so it could more easily transfer the information into its system for purposes of determining the sign-on bonus amounts. Williams attempted to hide numerous columns on the spreadsheet so only those from the PDF were revealed in the spreadsheet he gave Newmark. But the hidden columns could be unhidden, meaning he unwittingly gave Newmark KeyBank's full Pipeline Reports.

Appellees both knew the Pipeline Reports were confidential and were not to be shared outside of KeyBank. They maintained that they did not know there was hidden information in the spreadsheets until it was discovered during the course of the litigation. They also maintained that no one at Newmark knew about or saw any of the hidden information. During their initial nineteen months of working at Newmark, Appellees closed seven deals involving KeyBank clients.

KeyBank filed its complaint in December 2019, alleging that Appellees violated their non-compete and confidentiality agreements and misappropriated its

trade secrets.[1]  About a month later, KeyBank filed a motion for a preliminary injunction pursuant to Fed. R. Civ. P. 65, seeking to enjoin Appellees from (1) doing business with or soliciting any KeyBank customers for a period of time commensurate with the duration of their alleged noncompliance with their non-compete agreements; and (2) misappropriating KeyBank's trade secret and confidential information, by, among other things, soliciting and doing business with its customers.

After a hearing, the magistrate judge issued a report and recommendation that the district court grant the motion in part and deny it in part.  He found the Pipeline Reports were confidential and recommended that the court order Appellees to either return them to KeyBank or destroy them, but he recommended that the court otherwise deny the motion because KeyBank failed to show it would suffer irreparable injury if the injunction were denied.  The magistrate judge gave four reasons for his irreparable-harm finding.  First, there was no evidence Appellees had used KeyBank's confidential information to compete with KeyBank or divert its customers to Newmark.  The magistrate judge explained that KeyBank and Newmark shared common customers, Appellees closed only seven deals for Newmark that involved KeyBank customers, and there was no evidence that Appellees used the Pipeline Reports to secure those deals.  He also found that even if those deals were

---

[1] KeyBank asserted claims against both defendants for breach of contract and misappropriation of trade secrets, and against Williams for intentional interference with a business relationship and breach of the duty of loyalty.

the result of misappropriation or unlawful competition, any injury KeyBank suffered could be quantified and compensated by money damages after trial.  The second reason the magistrate judge gave for finding no irreparable harm was that there was no evidence of any current or ongoing use or misappropriation of its confidential information.  Third, there was no evidence that KeyBank lost competitive advantage as a result of Appellees' alleged unlawful competition or misappropriation of confidential information—it continued to do business with the customers involved in the deals Appellees closed for Newmark, and by at least one measure, its industry ranking was below Newmark's in 2018 but jumped ahead in 2019.  Finally, the magistrate judge found that KeyBank's delay in seeking the injunction undercut its irreparable-harm claim.  He noted that KeyBank learned of Appellees' possible breach of their non-compete and trade secret agreements in early to mid-2019 but did not file suit until December 2019 and did not seek injunctive relief until January 2020—a year after Appellees left KeyBank and just days before their restricted periods expired.

Considering KeyBank's objections to the report and recommendation and reviewing the question de novo, *see* 28 U.S.C. § 636(b)(1), the district court adopted the magistrate judge's factual findings and agreed that KeyBank failed to show irreparable harm.  Specifically, the court concluded that KeyBank's alleged harm was "inherently theoretical," noting that it argued in its objections that the threat of Appellees' solicitation of its customers or use of its confidential information warranted injunctive relief, but it presented no evidence that Appellees were

"currently using or misappropriating" that information. R., vol. II at 301. The court also agreed with the magistrate judge that KeyBank's delay in seeking relief "heavily weighs against the issuance of a preliminary injunction," because waiting to seek an injunction until one year after Appellees started working for Newmark and just days before their non-compete provisions expired showed no "sense of urgency." *Id.* at 302 (emphasis and internal quotation marks omitted).

Based on its determination that KeyBank failed to show irreparable harm, the court denied the preliminary injunction motion in its entirety, including the request that Appellees be ordered to return or destroy the Pipeline Reports.

## DISCUSSION

KeyBank contends the district court's irreparable-harm determination constitutes an abuse of discretion because (1) the court disregarded evidence that KeyBank suffered actual and unquantifiable injury in the form of diminished customer relations, goodwill, and competitive standing; and (2) the record does not support the finding that KeyBank delayed seeking relief. KeyBank also challenges the district court's rejection of the magistrate judge's recommendation to order Appellees to return or destroy the Pipeline Reports.

### Legal Standards

"We review the decision to deny a motion for a preliminary injunction for abuse of discretion." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). A district court abuses its discretion when its decision "is premised on an erroneous conclusion of law or where there is no rational basis in the evidence for the

ruling." *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1140 (10th Cir. 2017) (internal quotation marks omitted). We review the district court's factual findings for clear error and its legal conclusions de novo. *Id.* at 1140-41. "The district court's discretion in this context is necessarily broad and a strong showing of abuse must be made to reverse it." *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1201 (10th Cir. 2009) (internal quotation marks omitted).

A preliminary injunction "is an extraordinary remedy" that may be granted only when "the right to relief [is] clear and unequivocal." *Schrier*, 427 F.3d at 1258 (internal quotation marks omitted). To obtain an injunction, the moving party must show it "will suffer irreparable injury if the injunction is denied." *First W. Cap. Mgmt. Co.*, 874 F.3d at 1141 (internal quotation marks omitted). "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Schrier*, 427 F.3d at 1267 (internal quotation marks omitted). The burden of showing irreparable harm is not "an easy burden to fulfill." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1262 (10th Cir. 2004) (internal quotation marks omitted).

The purpose of a preliminary injunction is to "preserve the relative positions of the parties until a trial on the merits can be held," *Schrier*, 427 F.3d at 1258 (internal quotation marks omitted), "not to remedy past harm," *id.* at 1267. Thus, the movant must demonstrate "a significant risk" that it will experience future harm that "cannot be compensated after the fact by money damages." *First W. Cap. Mgmt. Co.*, 874 F.3d at 1141 (internal quotation marks omitted). In determining whether the

movant has shown irreparable harm, a district court may consider "the difficulty in calculating damages" and the "existence of intangible harms such as loss of goodwill or competitive market position." *Dominion Video*, 356 F.3d at 1264. Harm to goodwill can be irreparable even where the party seeking relief has not lost the customer entirely. *See Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1191-92 (10th Cir. 2009). But economic loss, including the loss of business, "usually does not, in and of itself, constitute irreparable harm." *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1190 (10th Cir. 2008) (internal quotation marks omitted); *see also First W. Cap. Mgmt. Co.*, 874 F.3d at 1140, 1143 (concluding district court abused its discretion by granting preliminary injunction despite finding that any damages caused by former employee's use of plaintiff's client list to solicit its clients would be quantifiable and that money damages "would adequately make the company whole" (brackets and internal quotation marks omitted)).

### Application

As an initial matter, we acknowledge Appellees' argument that even if KeyBank could establish irreparable injury, it could not obtain the injunctive relief sought—essentially, an extension of their expired restrictive periods under the non-compete agreements. Addressing this argument would require us to resolve choice-of-law and enforceability issues that the parties continue to disagree about in the underlying litigation and that KeyBank contends we lack jurisdiction to decide because the district court did not address them in the preliminary-injunction order.

8

We need not resolve any of these issues, however, because we find no abuse of discretion in the district court's irreparable-harm determination.[2]

### 1. Intangible Injury

KeyBank first contends the district court's finding that any injury it suffered was either theoretical or could be compensated by money damages ignores KeyBank's evidence that it suffered intangible injury in the form of diminished customer relationships, goodwill, and competitive standing. In support, it relies primarily on evidence it contends establishes that Appellees took and had unfettered access to the Pipeline Reports, solicited and closed deals with KeyBank customers, and continue to use KeyBank's confidential information to divert business to Newmark. KeyBank says "[n]one of this is theoretical. It was real." Aplt. Opening Br. at 37 (emphasis omitted). But the question is not whether Appellees' alleged wrongful conduct was real or theoretical. The question is whether their conduct caused and will continue to cause actual injury that cannot be compensated with money damages. *See Dominion Video*, 356 F.3d at 1263-64 (recognizing that irreparable harm "do[es] not automatically" arise from the breach of exclusivity, non-compete, and non-disclosure agreements).

---

[2] The choice-of-law and enforceability issues go to whether KeyBank can show a likelihood of success on the merits—a preliminary injunction factor the district court did not need to reach after concluding KeyBank failed to show irreparable harm. *See First W. Cap. Mgmt. Co.*, 874 F.3d at 1141 (explaining that "because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements will be considered" (internal quotation marks omitted)).

KeyBank's insistence that Appellees' past conduct and continued possession of the Pipeline Reports necessarily cost it future business and goodwill that cannot be measured is insufficient to establish the requisite irreparable harm. *See id.* at 1264-65 (district court abused its discretion in granting preliminary injunction where it found irreparable harm based solely on defendant's breach of exclusivity agreement and rejected plaintiff's assertions that it was losing customers, competitive position, and goodwill). And contrary to KeyBank's contention that the district court ignored its evidence and arguments, the record shows that the court considered KeyBank's evidence and was simply not persuaded by its argument that it would suffer irreparable injury absent injunctive relief. The court found no evidence that Appellees are using KeyBank's confidential information to solicit its customers and divert business to Newmark or that KeyBank has suffered or will suffer lost goodwill or competitive standing. KeyBank's disagreement with those findings does not establish that the court ignored KeyBank's evidence or that its findings are clearly erroneous.

Nor does KeyBank's disagreement with the court's ruling support the contention that the court "ignore[d] binding" precedent, Aplt. Opening Br. at 36. Our precedent recognizes that the loss of competitive standing or goodwill can give rise to irreparable injury. But "not all plaintiffs who have already suffered lost customers, stolen trade secrets, or intangible injury can show a sufficient probability of future irreparable harm to warrant a preliminary injunction." *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1271 (10th Cir. 2018). The district court

concluded that KeyBank failed to make that showing, and we find no abuse of discretion in its determination. *See id.* at 1271-73 (affirming denial of preliminary injunction based on loss of customers, loss of goodwill, and erosion of competitive position where plaintiff "did not establish a probability of future irreparable harm" and the prior loss of customers and "general decline of [plaintiff's] value as a business can be quantified in money damages"); *Schrier*, 427 F.3d at 1267 (affirming denial of preliminary injunction even though plaintiff alleged irreparable harm from "loss of prestige, academic reputation[,] [and] professional opportunities," because it failed to identify "evidence in the record showing actual or significant risk" that those harms would occur in the future).

The fact that Appellees' non-compete and trade secret agreements acknowledge that a breach "may cause serious damage and irreparable injury" supporting a claim for injunctive relief, *see* R., vol. II at 289-90 (internal quotation marks omitted), does not require a different result. The parties' recognition that irreparable harm could occur does not mean it did.

## 2. KeyBank's Delay in Seeking Relief

KeyBank next takes issue with the district court's finding that its delay in seeking injunctive relief undercut its irreparable-harm claim. It disagrees with the court's finding that it learned of Appellees' possible breach of their noncompete and trade secret agreements in early to mid-2019, insisting it "received the first concrete evidence that Williams had breached his restrictive covenant" in September 2019. Aplt. Opening Br. at 43. But the record indicates that KeyBank believed Weldon was

11

contacting KeyBank customers as early as February 2019, and it sent both Appellees correspondence in September and October reminding them of the restrictive covenants and obligations to KeyBank, yet waited several more months to file suit and seek a preliminary injunction. The district court's factual finding that KeyBank delayed seeking relief was thus not clearly erroneous.

Contrary to KeyBank's contention, the district court did not find that KeyBank's delay was fatal to its irreparable-harm claim. Rather, the court held that KeyBank's failure to seek relief earlier was inconsistent with its irreparable-injury claim and was one of several factors that weighed against issuing an injunction. Delay in seeking relief does not conclusively refute a showing of irreparable harm, but under the circumstances presented here, we find no abuse of discretion in the district court's determination that waiting to file suit until a year after Appellees started working for a competitor and days before their non-compete agreements expired undermined KeyBank's assertion that time was of the essence. *See Fish v. Kobach*, 840 F.3d 710, 753 (10th Cir. 2016) (explaining that delay in seeking preliminary relief can cut against finding irreparable injury); *GTE Corp. v. Williams*, 731 F.2d 676, 679 (10th Cir. 1984) (holding that delay in seeking an injunction can be "an important factor in determining irreparable harm").

We are not persuaded otherwise by the fact that KeyBank was engaged in settlement negotiations with Appellees for about three months before filing suit. Pursuing settlement discussions before seeking injunctive relief is not "fatal to [a] claim of irreparable injury." *Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. &*

12

*Rehab. Servs.*, 31 F.3d 1536, 1544 (10th Cir. 1994); *see also RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1212 (10th Cir. 2009) (delay in seeking an injunction "was not unreasonable and did not alter the irreparable harm analysis" where it stemmed from the parties' attempts to resolve the dispute, not plaintiff's "decision merely to sit on its rights" (internal quotation marks omitted)). But it was not unreasonable for the district court to conclude that "the duration of the parties' settlement efforts shows that [KeyBank] is not facing imminent and irreparable harm" because if it had been, it likely "would have immediately sought injunctive relief when it discovered [Appellees'] alleged wrongdoing" and before their restrictive covenants expired. R., vol. II at 302.

### 3. Return of Pipeline Reports

KeyBank's final contention is that the district court erred in rejecting the magistrate judge's recommendation that the motion for preliminary injunction be granted to the extent it seeks the return or destruction of the Pipeline Reports. That recommendation was based on the magistrate judge's conclusion that the "Pipeline Reports are confidential information belonging to KeyBank." *Id.* at 279. But the possession of confidential information does not justify injunctive relief absent a showing of irreparable harm, and because KeyBank failed to show irreparable harm, the district court properly denied the motion in its entirety. *See First W. Cap. Mgmt. Co.*, 874 F.3d at 1143 ("Without showing irreparable harm, [a plaintiff] cannot obtain a preliminary injunction.").

13

## CONCLUSION

We affirm the district court's order denying the motion for preliminary injunction. We make permanent our provisional order granting KeyBank's unopposed motion to seal Exhibits 56, 58A, 59A, 60A, 61A, 61B, 61C and 61C1.

Entered for the Court


Joel M. Carson III
Circuit Judge