**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**April 9, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

TOLGA ULUSEMRE,

    Plaintiff Counter Defendant -
Appellant,

v.

MICHELLE DOMBROSKY; MELISSA
HILLMAN; MARK SCHMIDT;
SUZANNE MARTIN; MARY BROWN;
MEAGHAN GRABER; KRISTIN
KELLERMAN; STEPHANIE CLELAND;
LILY BORDONI; TONYA MERRIGAN;
DAN CARNEY; AMY FARTHING;
ELIZABETH NEWELL; MAURY
HERNANDEZ; CADE CHACE; KELLY
NORTHUP; PEGGY SALTS; POLLY
BLAIR; KELLY BECK; CLIFFORD
COHEN; CRISTA GRIMWOOD; DIANA
DURKIN; ANGELA GUPTA,

    Defendants - Appellees,

BLUE VALLEY BOARD OF
EDUCATION,

    Defendant Counterclaimant -
Appellee,

and

JOANN WOLTMAN,

    Defendant.

No. 25-3100
(D.C. No. 5:24-CV-04095-TC-ADM)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TYMKOVICH**, **BALDOCK**, and **MORITZ**, Circuit Judges.

_____

This is an appeal from the denial of a preliminary injunction in a civil rights case. Pro se appellant Tolga Ulusemre has sued, among other defendants, 18 current and former employees of the Blue Valley School District (collectively, "Blue Valley"). He alleges that Blue Valley falsely accused his two sons of making criminal threats—aiming to drive them out of the school district—in retaliation for his outspoken advocacy for the boys' educational needs.

While his suit was underway, Ulusemre moved for a preliminary injunction to prohibit Blue Valley from restricting his access to Liberty View Elementary School ("LVE") property. The district court denied Ulusemre's motion after a hearing, concluding he hadn't satisfied the required preliminary injunction factors. Exercising jurisdiction under 28 U.S.C. § 1292(a)(1), we affirm, but on an alternate ground—the motion before the district court was clearly moot. Further, we decline to consider Ulusemre's suggestion that judicial bias affected the motion's outcome.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

2

## BACKGROUND

The operative complaint alleges that Ulusemre and his wife pursued numerous avenues—emails, parent-teacher conferences, social media posts, and state grievance procedures—to voice concerns about how their sons, A.U. and D.U., were being treated in school. In retaliation for the parents' criticisms, Blue Valley staff conspired to "eject[] the family from school" by "fram[ing] threat cases against both A.U. and D.U." R. vol. I at 450 ¶ 181. To wit, Blue Valley investigated D.U. for having a "murder list" (presumably, a list of classmates and/or teachers he wished to kill). *Id.* at 428 ¶ 55. Blue Valley also investigated A.U. for searching the terms "bomb" and "C4" on a school computer. *Id.* ¶¶ 51–52. These accusations—along with other false reports of disruptive or violent classroom behavior—led to the boys' involuntary transfer to other schools.

While these disputes were ongoing, Ulusemre and his wife continued to email several Blue Valley teachers about their sons' grades and disciplinary records. On August 14, 2023, due to the emails' tone and frequency, Melissa Hillman[1] directed the parents to confine their communications solely to school administrators. Hillman warned that noncompliance would result in a "complete ban on [the parents'] access to Blue Valley property and personnel." *Id.* at 511.

On December 13, 2023, Ulusemre resumed sending emails to D.U.'s teachers, which were "perceived as uncivil and threatening." *Id.* at 630. Consequently,

---

[1] Blue Valley's Chief Legal Officer.

3

Hillman informed Ulusemre the same day that he was "no longer permitted to be on the premises of Liberty View Elementary School for any purpose other than to transport [D.U.] to and from school." *Id.* On January 19, 2024, after Ulusemre was seen in LVE's school cafeteria, Dan Carney[2] echoed Hillman's directive: "[Y]ou are not to enter upon the premises of Liberty View Elementary School at any time for any purpose other than to transport [D.U.] to and from school. You are not to enter the school building." *Id.* at 624.

Nine months later, Ulusemre filed this lawsuit in the U.S. District Court for the District of Kansas. While the case proceeded, he moved for a preliminary injunction to prohibit Blue Valley from enforcing his ban from LVE property.[3] Ulusemre argued that Blue Valley had imposed the ban "in retaliation for his inquiries, requests, and complaints" regarding D.U.'s treatment at school, and that it did so "without any reasonable explanation" or "opportunity to contest the ban." *Id.* at 619, 621. According to Ulusemre, the ban's continuation would cause irreparable harm by barring him from civic events held at LVE, and from using LVE facilities that were open to the public after school hours (e.g., the playground). Further, Blue Valley lacked any interest in maintaining the ban—Ulusemre had "no reason to go to [LVE]

---

[2] Blue Valley's Director of Safety and Security.

[3] Ulusemre actually filed this motion twice. The first filing occurred on March 30, 2025—five days after he couldn't attend his annual homeowners' association meeting because it was held at LVE. In the interim, Ulusemre filed his second amended complaint, mooting his pending preliminary injunction motion. On April 20, 2025, Ulusemre refiled the motion, which the parties then fully briefed.

during school hours" anymore because, by that time, D.U. no longer attended LVE. *Id.* at 621.

Three days after the motion's filing, Carney contacted Ulusemre to clarify or modify the ban's parameters:

> I am writing to address your access to Liberty View Elementary School (LVE) property. It came to my attention through a legal action you filed that you would like access to LVE for the purpose of attending homeowner association meetings.
>
> At this point, I understand you do not have any students enrolled at Liberty View Elementary School and would no longer have reason to visit during school activities. However, based on your consistent adherence to the original restrictions we will allow you to come to the school after school hours for events and meetings that are not sanctioned by the School District.

Suppl. R. vol. I at 37.

Later in response to the motion, besides arguing the preliminary injunction factors weren't met, Blue Valley argued the motion was moot. In its view, Carney's recent email meant Ulusemre was now "free to access LVE property the same as any member of the public," such that his requested relief was no longer needed. *Id.* at 30. Ulusemre argued in reply that, by relaxing the ban right after the motion's filing, Blue Valley had effectively conceded the prior ban was legally indefensible. Further, the motion wasn't moot because, without an injunction, Blue Valley could "reimpose the ban later anytime for any reason it deems appropriate." R. vol. I at 692.

The district court held a motion hearing, during which Blue Valley affirmed its intent not to reimpose the ban unless Ulusemre did something new and different. *See* R. vol. II at 39. Likewise, when asked directly, Ulusemre expressed no basis to

5

believe—other than the specter of the ban's arbitrary renewal—that Blue Valley would exclude him from LVE premises in the future. *See id.* at 42–43. After the parties' arguments, the court issued a bench order denying the preliminary injunction. *See id.* at 48–50. The court reasoned that while some of Ulusemre's allegations might warrant retrospective relief, overall he hadn't shown a substantial likelihood of succeeding on his First Amendment retaliation claim. Further, Ulusemre hadn't shown that he would suffer irreparable harm absent an injunction—going forward, he could freely access LVE after school hours and, by his own admission, he no longer had any basis to be there while school was in session.

This interlocutory appeal followed. For the reasons explained below, we affirm the district court's denial of the preliminary injunction.

## DISCUSSION

### I.    Preliminary Injunction and Mootness

"We review the decision to deny a motion for a preliminary injunction for abuse of discretion," which occurs if the decision is "premised on an erroneous conclusion of law" or if it lacks any "rational basis in the evidence." *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1269 (10th Cir. 2018) (internal quotation marks omitted).

"A preliminary injunction is an extraordinary remedy," *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019) (internal quotation marks omitted), which may be awarded only if "the movant's right to relief [is] clear

and unequivocal," *Planned Parenthood of Kan. v. Andersen*, 882 F.3d 1205, 1223

(10th Cir. 2018).  A preliminary injunction movant must show:

> (1) that [they're] substantially likely to succeed on the merits, (2) that
> [they'll] suffer irreparable injury if the court denies the injunction, (3) that
> [their] threatened injury (without the injunction) outweighs the opposing
> party's under the injunction, and (4) that the injunction isn't adverse to the
> public interest.

*Free the Nipple-Fort Collins*, 916 F.3d at 797 (internal quotation marks omitted).

Ulusemre challenges the district court's analysis of these preliminary

injunction factors on several fronts.  He argues, for instance, that the court

misapplied the "likelihood of success" factor—because the motion was grounded on

alleged First Amendment retaliation, it was Blue Valley's burden to prove that his

ban from LVE was constitutional, *not* his burden to prove its unconstitutionality.

Closely related, Blue Valley's failure to present any evidence justifying the ban—i.e.,

the specific threat he posed to LVE staff—meant that a violation of his First

Amendment rights should've been presumed.  Furthermore, Ulusemre argues that the

court misconstrued the facts in finding that the modified ban places him on equal

footing with all other members of the public without children enrolled at LVE.  This

was clear error, he says, because, even in its current relaxed form, the ban still

unfairly singles him out for restriction from LVE property.

Ultimately, we need not reach any of the arguments Ulusemre raises above.

After a thorough review of the record and the parties' briefing, we conclude the

7

preliminary injunction motion was rendered moot by Blue Valley's subsequent changes to the ban.[4]

At the outset, because our inquiry isn't whether Ulusemre's *entire lawsuit* against Blue Valley was moot, but whether his *preliminary injunction motion* was moot, we're guided by principles of prudential mootness rather than constitutional mootness. *See S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997) ("Prudential mootness addresses not the power [under Article III] to grant relief but the court's discretion in the exercise of that power." (internal quotation marks omitted)). Courts invoke prudential mootness in the context of requests for prospective injunctive relief—often, where a plaintiff seeks to block a law that the state later repeals on its own, or where he seeks to compel an action that the state later undertakes voluntarily. *See Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012).

A court may, in its discretion, deny a preliminary injunction as prudentially moot where the defendant "has already changed or is in the process of changing its

---

[4] The district court heard extensive argument on mootness and the voluntary cessation exception, but its bench ruling appears to have been grounded solely in the preliminary injunction motion's merits. *See* R. vol. II at 48–50. Nevertheless, we may "affirm on any ground supported by the record, so long as the appellant has had a fair opportunity to address that ground." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1180 (10th Cir. 2018) (internal quotation marks omitted). And here, Ulusemre has briefed the mootness issue thoroughly. *See* Aplt. Opening Br. at 15–17; *see also* Aplt. Reply Br. at 7 ("There is no point in discussing the merits of Plaintiff's preliminary injunction in this matter without taking voluntary cessation doctrine into consideration.").

policies," *Bldg. & Constr. Dep't v. Rockwell Int'l Corp.*, 7 F.3d 1487, 1492 (10th Cir. 1993), or where "a change in circumstances renders it highly unlikely that the actions in question will be repeated," *Fletcher v. United States*, 116 F.3d 1315, 1321 (10th Cir. 1997).  Conversely, to avoid dismissal on prudential mootness grounds, the preliminary injunction movant "has the burden of showing relief is needed because there exists some cognizable danger of recurrent violation." *Eaves v. Polis*, 167 F.4th 1304, 1312 (10th Cir. 2026) (internal quotation marks omitted).

Consistent with these principles, we have no trouble concluding the motion was moot after Blue Valley modified the ban.  Fundamentally, Ulusemre moved for a preliminary injunction to regain the same level of access to LVE enjoyed by other community members who don't have children enrolled there.  In particular, (i) he sought to attend public events and to use public facilities at LVE *outside* school hours, and (ii) he expressly disclaimed any need or desire to be at LVE *during* school hours.  *See* R. vol. I at 620–21.  Carney's email—clarifying that he could "come to the school after school hours for events and meetings that are not sanctioned by the School District"—thus afforded Ulusemre precisely the relief he requested.  Suppl. R. vol. I at 37.  Accordingly, once Blue Valley had changed its policy regarding Ulusemre's access to LVE, he no longer suffered any injury that a preliminary injunction could remedy.  *See Bldg. & Constr. Dep't*, 7 F.3d at 1492.

Nevertheless, Ulusemre argues the voluntary cessation exception to mootness applies because Blue Valley (1) is free to reimpose the ban at will; and (2) hasn't met its burden to show that, based on subsequent events, it's "absolutely clear that the

allegedly wrongful behavior [cannot] reasonably be expected to recur." Aplt. Opening Br. at 16 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 189 (2000)); *see also id.* at 15–17. For two reasons, we're unconvinced.

First, it wasn't *Blue Valley's burden to show mootness* by satisfying the "absolutely clear" standard—rather, that standard is used for questions of constitutional mootness and so is inapposite here. *See Eaves*, 167 F.4th at 1310–12 (distinguishing between constitutional mootness and prudential mootness based on their different standards and burden allocations).

Second and relatedly, it was *Ulusemre's burden to avoid mootness* by showing a "cognizable danger of recurrent violation" beyond mere speculation or abstract possibility. *See id.* at 1312. He failed to do so. Ulusemre himself indicated that, aside from attending after-hours civic events, he has no intent to go to LVE because D.U. isn't enrolled there anymore. Correspondingly, Blue Valley stated that another ban is unlikely unless Ulusemre were to do something new and different, *see* R. vol. II at 39, and Ulusemre articulated no nonspeculative reason to believe that Blue Valley would exclude him from LVE going forward, *see id.* at 42–43. The record before us provides no reason to doubt either party's representations as to the minimal risk of future restrictions on Ulusemre.

At bottom, Blue Valley's changes to the ban effectively forestalled any occasion for equitable relief. We therefore conclude that the denial of a preliminary injunction under the circumstances wasn't an abuse of discretion.

10

## II.    Judicial Bias

Separately, Ulusemre argues the district court has shown a "predisposition to favor government officials and trial lawyers over commoners and *pro se* parties" like himself.  Aplt. Opening Br. at 21.  In support, he presents a lengthy, bullet-pointed list of eleven statements or actions by the court that have "undermined the appearance of impartiality" during the litigation.  *Id.* at 22–23; *see id.* at 23–28.  Though he doesn't say so outright, a liberal construction of his briefing suggests his view that judicial bias tainted the motion's outcome.[5]

Judicial bias may be alleged either as a due process violation, or in the context of a failure to recuse under 28 U.S.C. § 455(a).  Ulusemre didn't object on either ground before the district court, so we ordinarily would review his judicial bias claim for plain error.  *See United States v. Woodmore*, 135 F.4th 861, 873 (10th Cir. 2025).  However, for two reasons, we decline to review this claim *at all*.

First, to the extent Ulusemre intends to argue judicial bias, this argument isn't adequately presented to us.  He doesn't specify whether his judicial bias claim is premised on constitutional or statutory grounds.[6]  Nor does he elaborate on *how* the

---

[5] A pro se litigant's papers are to be construed liberally.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  That said, we do not "serv[e] as the litigant's attorney in constructing arguments and searching the record."  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

[6] That said, there's some overlap between those standards—both involve analysis of whether "sufficient factual grounds exist to cause a reasonable, objective person, knowing all the relevant facts, to question the judge's impartiality."  *United States v. Pearson*, 203 F.3d 1243, 1277 (10th Cir. 2000) (in the § 455(a) context);

11

district court's conduct showed objectively improper, reversible favoritism toward

Blue Valley or antagonism against him.  Instead, Ulusemre baldly lists instances of

the court's purported bias, devoid of further analysis or any citation to supporting

authority.  We need not opine on the merits of a claim without a fully developed

framing of the relevant issues.  *See, e.g.*, *Burrell v. Armijo*, 603 F.3d 825, 835

(10th Cir. 2010) ("[O]n appeal, issues nominally raised but inadequately briefed need

not be considered.") (internal quotation marks omitted); *Reedy v. Werholtz*, 660 F.3d

1270, 1275 (10th Cir. 2011) (declining to address a procedural due process issue

where, despite "mak[ing] a start at arguing" it, the opening brief didn't meaningfully

"challenge the [district] court's reasoning" on the issue); *see also* Fed. R. App. P.

28(a)(8)(A) (requiring an appellant to support his arguments with reasoning and legal

authority).

Second, as noted above, Ulusemre never moved for recusal or otherwise raised

the issue of judicial bias before the district court.  What's more, he hasn't requested

plain error review of his judicial bias argument on appeal.  Where, as here, "an

appellant fails to preserve an issue and also fails to make a plain-error argument on

appeal, we ordinarily deem the issue waived . . . and decline to review the issue at

all—for plain error or otherwise."  *United States v. Leffler*, 942 F.3d 1192, 1196

(10th Cir. 2019); *accord Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131

(10th Cir. 2011) ("[T]he failure to argue for plain error and its application on

---

*United States v. Nickl*, 427 F.3d 1286, 1298 (10th Cir. 2005) (same, in the due process context).

appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court.").

All told, Ulusemre's suggestion of judicial bias is both unsupported and unpreserved, and he hasn't asked us to review it for plain error. Accordingly, we decline to do so.

## CONCLUSION

For the above reasons, we AFFIRM the district court's denial of Ulusemre's preliminary injunction motion.

Entered for the Court

Nancy L. Moritz
Circuit Judge